## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

GEORGE S. COHLMIA, JR., MD., and )
CARDIOVASCULAR SURGICAL          )
SPECIALISTS CORP.,               )
                                 )
        **Plaintiff,**           )
                                 )
v.                               )        **Case No. 05-CV-0384-GKF-PJC**
                                 )
ARDENT HEALTH SERVICES, LLC,     )
et al.,                          )
                                 )
        **Defendants.**          )

## OPINION AND ORDER

This matter comes before the Court on Defendants' Joint Motion to Strike Expert

Reports of Riddle, Watts and Winslade (hereafter, "Motion to Strike") [Dkt. # 182].  The

targets of Defendants' Motion are three of Plaintiffs' proposed expert witnesses in this

case:  Jon M. Riddle ("Riddle"), Clark Watts ("Watts"), and William J. Winslade

("Winslade").[1]

Plaintiffs filed this action on July 7, 2005 [Dkt. # 1].  The *Complaint* has since

been amended twice.  Plaintiffs have sued nine corporate and 11 individual defendants.

Plaintiffs assert the following claims[2]:

        Count I – Antitrust conspiracy (all 20 Defendants);

        Count II – Antitrust (8 corporate Defendants);

        Count III – Illegal boycott (all 20 Defendants);

---

[1]     Plaintiffs have two other expert reports that are not challenged by the Defendants'
motion.

[2]     Counts III and VIII were dismissed with prejudice by District Judge James H.
Payne on August 9, 2006 [Dkt. # 83].  Plaintiffs have continued to list these claims
"solely for the purpose of record preservation." *Joint Status Report on Defendants and
Claims* [Dkt. # 185], p. 3.

Count IV – Oklahoma Antitrust (all 20 Defendants);

Count V – Tortious Interference (all 20 Defendants);

Count VI – Defamation ( 7 corporate Defendants and 7 individuals);

Count VII – 42 U.S.C. § 1981 (all 20 Defendants);

Count VIII – Intentional infliction of emotional distress (all 20

Defendants);

Count IX – Injunction (all 20 Defendants).

*Joint Status Report as to Defendants and Claims* [Dkt. # 185].

On April 23, 2007, the case was transferred to District Judge Gregory K. Frizzell

[Dkt. # 119].  Thereafter, Judge Frizzell entered a Scheduling Order [Dkt. # 122], which

was subsequently amended pursuant to Plaintiffs' motion.  *Amended Standard*

*Scheduling Orde*r [Dkt. # 154].

The *Amended Standard Scheduling Order* set certain deadlines:

6-13-2008     PLAINTIFFS' EXPERT REPORTS

8-15-2008     DEFENDANTS' EXPERT REPORTS

9-15-2008     DISCOVERY CUTOFF

5-18-2009     TRIAL

In addition, the Scheduling Order set a November 7, 2008, deadline for filing dispositive

motions, *Daubert* Motions and motions in limine with a hearing on dispositive motions

on January 15, 2009.

In accordance with the Court's June 13 deadline, the Plaintiffs timely produced

reports from Riddle, Watts and Winslade; however, Defendants contend that these reports

do not comport with the requirements of Fed. R. Civ. P. 26(a)(2)(B)(i) and that they

should be stricken pursuant to Rule 37(c).  Plaintiffs contend that the reports meet the

requirements of Rule 26.  Alternatively, Plaintiffs state that if the Court finds that the

reports are deficient in any way these deficiencies can be cured by supplementation of the

initial report without harm to Defendants.[3]

# I
# REQUIREMENTS OF RULE 26(A)

Federal Rule 26(a)(2) requires that each expert witness prepare and sign a written

report containing his/her opinions as well as other pertinent information.  The Rule

requires the following:

> (i) a complete statement of all opinions the witness will express and the
> basis and reasons for them;

> (ii) the data or other information considered by the witness in forming
> them;

> (iii) any exhibits that will be used to summarize or support them;

> (iv) the witness's qualifications, including a list of all publications
> authored in the previous 10 years;

> (v) a list of all other cases in which, during the previous four years, the
> witness testified as an expert at trial or by deposition; and

> (vi) a statement of the compensation to be paid for the study and testimony
> in the case.

Fed. R. Civ .P. 26(a)(2)(B)(i)-(vi).[4]

These directives are "mandatory." *Lohnes v. Level 3 Comm., Inc.*, 272 F.3d 49,

59 (1st Cir. 2001).  A litigant who fails to comply with these requirements does so at his

own peril.  Rule 37(c)(1) bars the use of a witness or information that was not disclosed

as required by Rule 26(a) or (e) unless the offending party can establish that the failure to

---

[3]      Supplementation of expert reports is governed by Rule 26(e).

[4]      At a hearing held August 18, 2008, Defendants agreed that Plaintiffs' expert
reports met the requirements of Rule 26 insofar as listing qualifications, publications,
cases testified in and compensation.  Thus, the only issue before the Court is the experts'
compliance with the requirements of Rule 26(a)(2)(B)(i) and (ii).

comply with the Rule is either substantially justified or harmless.  *Kern River Gas*

*Transmission Co. v. 6.17 Acres*, 156 Fed. Appx. 96, 101 (10th Cir. 2005).   Determination

of whether a violation of Rule 26(a) is justified or harmless is left to the broad discretion

of the trial court.  *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d

985, 993 (10th Cir. 1999).  The court should consider the following factors:  (1) prejudice

or surprise to the party against whom the report is offered; (2) ability of the party to cure

the prejudice; (3) extent to which introducing such testimony would disrupt the trial; and,

(4) the moving party's bad faith or willfulness.  *Id.*

      Rule 37(c) is a self-executing sanction.  *Kern River*, 156 Fed. Appx. at 102;

*Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); *Barron v. Federal Reserve Bank*

*of Atlanta*, 129 Fed.Appx. 512, 519 (11th Cir. 2005).  Exclusion is automatic unless the

offending party can show substantial justification or harmlessness.  *Kajitani v. Downey*

*Savings & Loan Ass'n*, 2008 WL 2751232 *3 (D.Hawaii July 15, 2008).

      The reasons for requiring expert reports are "elimination of unfair surprise to the

opposing party and the conservation of resources."  *Sylla-Sawdon v. Uniroyal Goodrich*

*Tire Co.*, 47 F.3d 277, 284 (8th Cir.), *cert. denied*, 516 U.S. 822 (1995); s*ee also Smith v.*

*State Farm Fire and Casualty Co.*, 164 F.R.D. 49, 53 (S.D.W.V.1995); *Nguyen v. IBP,*

*Inc.*, 162 F.R.D. 675, 682 (D.Kan.1995).   Rule 26 was amended in 1993 to require

disclosure of information regarding expert testimony sufficiently before trial so that the

opposing party will have "a reasonable opportunity to prepare for effective cross-

examination and perhaps arrange for expert testimony from other witnesses."  Fed. R.

Civ. P. 26(a)(2) advisory committee's note to the 1993 Amendments (hereafter, "Rule 26

committee note").  The expert must prepare a "detailed and complete written report

stating the testimony the witness is expected to present during direct examination,

*together with the reasons therefor*." *Id.* (emphasis added). Under the prior version of

Rule 26 information disclosed in answers to interrogatories about the substance of expert

testimony frequently was so "sketchy and vague that it rarely dispensed with the need to

depose the expert and often was even of little help in preparing for a deposition of a

witness." *Id.*

It is not sufficient that an expert report merely set forth the opinions the expert

will offer; it must also describe the reasons and basis for those opinions. Expert reports

must include "how" and "why" the expert reached a particular result, not just his

conclusory opinion. *See Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996). The report

is to state "the testimony the witness is expected to present during direct examination."

Rule 26 committee note. Amended Rule 26 envisions an expert report so detailed that "in

many cases the report may eliminate the need for a deposition." *Id*.

"The test of a report is whether it was sufficiently complete, detailed and in

compliance with the Rules so that surprise is eliminated, unnecessary depositions are

avoided, and costs are reduced." *Reed*, 165 F.R.D. at 429. In *Hilt v. SFC, Inc.*, 170

F.R.D. 182 (D.Kan. 1997), the court addressed what is required in an expert report.[5]

> To satisfy Fed.R.Civ.P. 26(a)(2)(B) the report must provide the
> substantive rationale in detail with respect to the basis and reasons for the
> proffered opinions. It must explain factually why and how the witness has
> reached them.

*Id.* at 185.

---

[5]   *Hilt* addressed the sufficiency of an expert report in the context of a Motion to
Compel answers to interrogatories. One interrogatory asked: "With respect to each
expert witness you intend to call at trial, please provide the information described in Rule
26(a)(2)(B) of the Federal Rules of Civil Procedure." For purposes of today's analysis,
this distinction is of no consequence.

**II**
**DISCUSSION**

### 1. Description of the Reports at Issue.

The challenged reports are similar in several respects.  First, all three reports

contain a section outlining what information the expert has reviewed.  In each case, this

consists of enumerated pleadings, motions, and discovery documents – including

transcripts of the various peer review/disciplinary hearings of the Plaintiff.  Second, all of

the reports recite opinions but offer little or no explanation of the basis of the opinions or

the methodology by which they were reached.  Third, each report contains a "disclaimer"

to the effect that discovery is ongoing and, thus, the witness reserves the right to amend

and/or supplement his report as necessary.   With this background, the Court will now

examine each of the three challenged reports.

### (A)  Report of Jon M. Riddle.

Riddle is Plaintiffs' expert on antitrust issues, including relevant market and

economic damages.  Expert Report of Jon M. Riddle (hereafter "Riddle") (attached as

Exhibit "A" to Defendants' Motion to Strike).

**Opinions.**  Riddle's Summary of Opinions sets forth 11 enumerated opinions.

Only five of these paragraphs (1, 8, 9, 10 & 11) offer true conclusions.  Paragraphs 2, 3,

4, 6 & 7 describe Riddle's "expected" opinions.  Paragraph 5 is an incomplete sentence

offering no conclusion at all.  None of the listed opinions explains what data it is based

on or the process by which it was reached.

Riddle states that Plaintiffs were unable to complete their development of a new

specialty care hospital in Tulsa and suffered damages as a result.  "As additional

information becomes available, I will be better able to quantify these issues.  At present, I

believe the amount to be in excess of $9.5 million." Riddle does not explain what

information he is lacking or what data or methodology he used to reach the $9.5 million

damage estimate.

**Basis for opinions.** Riddle recites that he "examined various materials" provided

by Plaintiffs' attorneys and lists these items in an Appendix to his report. Riddle at 2.

They consist of pleadings and discovery material. At one point, Riddle states that he

"relied on additional publicly available materials also referenced throughout this report."

*Id.* But nowhere does Riddle describe what these "publicly available materials" are; nor,

are any such materials "referenced throughout" the report. Riddle also makes references

to "data" that he is "accumulating and reviewing", but does not disclose what this data is.

*See* Riddle at ¶¶ III(2) & (3).

### (B)  Report of Clark Watts, M.D., J.D.

**Opinions.** Watts describes his opinions as "preliminary in nature" because much

discovery remains to be conducted.[6]   Watts states that he was engaged to offer an

opinion as to "whether Dr. Cohlmia received a fair peer review." Report of Clark Watts

at 5 (hereafter, "Watts") (attached as Exhibit "B" to Defendants' Motion to Strike).

However, his report goes far beyond this assignment. He opines not only that "The

defendants handled the peer review against Dr. Cohlmia … in a sloppy, quite biased, and

even malicious manner." *Id.*  But he also opines on Defendants' motivation . "One can

conclude [Defendants'] primary interests were not the delivery of quality patient care (the

---

[6]      "Preliminary expert reports" do not satisfy the requirements of Rule 26(a).
*Salgado ex rel. Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n. 6 (7th Cir. 1998)
("Expert reports must not be … preliminary in nature."); *In re TMI Litigation Cases*, 922
F.Supp. 997, 1005 n.9 (M.D.Pa. 1996); *Smith,* 164 F.R.D. at 53-54 (finding that a
"preliminary report" is not contemplated by Rule 26). The Rule requires a "complete
statement of all opinions." *Smith*, 164 F.R.D. at 53.

true basis for hospital peer review), or the maintenance of professional ethics, but the economics of cardiovascular surgery in Tulsa." Watts at 5. Watts does not describe how he reached this opinion.

Watts also opines that certain conduct by Defendants was "despicable," constituted a "boycott" of Cohlmia, and was politically motivated. (Watts at 5). He states that restrictions placed on Cohlmia's practice were "unwarranted and unreasonable" and that pre-surgical review requirements were "non-sensical." (Watts at 6). Watts concludes that "The unprofessional bias of emotion and character flaw of hardball are at play" in Defendants' actions. (Watts at 5-6). Again, there is little explanation of how he reached these conclusions – even assuming that such opinions would be appropriate for an expert.

**Basis for opinions.** Watts states that his opinions are based on his 46 years as a medical doctor, knowledge of operations of numerous healthcare facilities and the physicians and administrators who operate them, "including the internal procedures for the peer review process." Watts at 4. He also states that he has reviewed certain documents including transcripts of the Cohlmia peer review/disciplinary proceedings, certain pleadings, and certain discovery pleadings.

Watts references Cohlmia's summary suspension by St. John Medical Center in July 2003, but does not cite to anything specific in the record or transcript of that event. He also refers to testimony of Dr. Elkins, but again Watts offers no detail as to what in Elkins' testimony he relies upon or how that testimony factored into any of his preliminary conclusions.

**(C) Report of William J. Winslade, Ph.D., J.D.**

Winslade is offered as an expert as to the conduct and fairness of peer review and disciplinary proceedings against Cohlmia. Winslade's expert report has two fatal flaws: It is not a report and it evidences no demonstrable expertise. It is not a report because it does nothing more than list seven opinions to which Winslade is willing to testify. The report reveals no demonstrable expertise because Winslade fails to state how he reached any of his conclusions.

Winslade states that he has reviewed "various court and discovery pleadings" as well as the complete transcripts of the peer review and disciplinary proceedings against Cohlmia, the deposition of Dr. Ronald Elkins and documents produced by Elkins. Winslade's expert opinions, "[b]ased on my review of the case, and based on my education, training, and experience," are succinct:

> 1.     How medical peer review should be conducted and how it can be misused. *I believe that the review process was misused in this case*.

> 2.     Whether the summary suspension of Dr. Cohlmia's privileges at St. John Medical Center and the related administrative process was warranted, fair or justified. *They were not.* I will also address whether either the process or the result complied with federal and state law, including the HCQIA. *They did not. The process was unfair and illegal.*

> 3.     Whether the restrictions, summary suspensions, refusal to renew, and revocation of Dr. Cohlmia's privileges at Hillcrest Medical Center were warranted, fair, or justified. *They were not.*

> 4.     Whether the actions of Defendants harmed rather then protected patients. *They did.*

> 5.     Whether the administrative process at Hillcrest was fair and whether the procedures complied with the provisions of federal and state laws, including the HCQIA. *They did not. The process was unfair and illegal.*

> 6.      Whether any physicians or others who participated in any
> of the proceedings acted unfairly, unreasonably, in bad faith, with malice,
> or with bias against Dr. Cohlmia.  *They did.*
>
> 7.      Whether the attack on Dr. Cohlmia's competence was
> motivated by a malicious plan to undermine and destroy his medical
> practice, block the development of a new specialty heart hospital and
> remove Dr. Cohlmia as a competitor, rather than to protect patients.  *It
> was.*

Report of William J. Winslade, pp. 5-6 (hereafter "Winslade") (attached as Exhibit "C" to

Defendants' Motion to Strike) (emphasis added).

This is Winslade's complete analysis.  He offers seven opinions, but no

explanation or suggestion of what informs those opinions – how he reached his

conclusions and what he based them on.

### 2.  Finding of Non-Compliance.

The expert reports do not comport with the requirements of Rule 26.  While each

expert announces what he will opine or expects to opine, there is no description of how

he reached that opinion – what specific data or information he based the opinion on.

This clearly does not meet the test of Rule 26.  In *Upsher-Smith Laboratories, Inc. v.*

*Mylan Laboratories, Inc.*, 944 F.Supp. 1411 (D.Minn. 1996), the court examined expert

reports and found them lacking:

> [T]he reports wholly fail to disclose, in any intelligible way, the facts and
> rationale which underlie the opinions expressed.  As such, the reports
> provide virtually no assistance to opposing counsel in preparing to cross-
> examine Mylan's experts.

*Id.* at 1439.

This is clearly the case here.  The reports do not set forth the expected testimony

of the experts as to how and why they reached their opinions.  Mere conclusory opinions

are not sufficient to meet the requirements of Rule 26.  The reports are useless in

preparing for cross-examination.[7]

### 3.  Cure through Supplementation.

Plaintiffs contend that the reports on their face fully comply with Rule 26.  The

Court disagrees for the reasons set forth above.  Alternatively, Plaintiffs argue that any

defects can be cured through supplementation up to 30 days before trial.  Plaintiffs

misconstrue the meaning of the term "supplement."  A party cannot offer a mere litany of

opinions, devoid of rationale, and contend that the report will be "supplemented" later

with the basis and reasons.  This clearly does not comply with Rule 26(a).  As this Court

has previously noted:

> A supplemental expert report that states additional opinions or rationales
> or seeks to "strengthen" or "deepen" opinions expressed in the original
> expert report exceeds the bounds of permissible supplementation and is
> subject to exclusion under Rule 37(c)(1). "To rule otherwise would create
> a system where preliminary [expert] reports could be followed by
> supplementary reports and there would be no finality to expert reports, as
> each side, in order to buttress its case or position, could 'supplement'
> existing reports and modify opinions previously given. This result would
> be the antithesis of the full expert disclosure requirements stated in Rule
> 26(a).

*Palmer et al. v. Asarco, et al.*, 2007 WL 2254343 at *3 (N.D.Okla. Aug. 3, 2007)

(quoting *Cook v. Rockwell Int'l Corp.*, 2006 WL 3533049 *87 (D.Colo. Dec.7, 2006)

(citations omitted)).

The supplementation Plaintiffs suggest here is, in fact, a second bite at the apple –

an opportunity to correct fatal defects in the reports they have submitted.  That is not

---

[7]     Plaintiffs tacitly conceded the shortcomings of their reports at the August 18
hearing.  When counsel for Oklahoma Heart Institute suggested that as an alternative to
striking these reports, Plaintiffs merely be required to live with them – without
supplementation – Plaintiffs' counsel rejected this idea as "unfair."

what Rule 26(e) envisions. Rule 26(e) "does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report." *Id. at* \*3 (citations omitted).

Supplementation would undermine the schedule entered in this case and already extended once at Plaintiffs' request. The District Judge established a schedule requiring Plaintiffs' expert reports by June 13 and Defendants' reports by August 15.  Orderly disposition of this case requires adherence to the schedule:  Discovery cutoff is less than 30 days off.  Dispositive motions and *Daubert* motions are due in early November. There are 20 Defendants, each of whom will likely file dispositive motions with respect to some, if not all, of the claims against him.  These motions, as well as *Daubert* motions and other in limine motions will require extensive briefing and consideration. "Supplementation" of these expert reports up to 30 days before trial is simply not realistic.

Plaintiffs alternatively suggest that supplementation be required 20 days after discovery cutoff.  This again derails the Court's schedule, in a case that has been on file for more than three years.  It would permit Plaintiffs to submit their reports nearly four months after the June 13 deadline and would turn the expert report procedure on its head – Defendants would be producing reports first, contrary to the Court's schedule. Defendants would have to be given an opportunity to respond to Plaintiffs' experts, thus prolonging the process even longer and increasing the expense to all parties. Furthermore, depositions of these experts cannot proceed until after they submit their reports.  Fed. R. Civ. P. 26(b)(4)(A).  Defendants cannot depose these witnesses on the basis of the existing reports because they do not set forth the reasons or methodology

supporting their opinions.  If Defendants have to wait until 20 days after close of

discovery, it will cause severe disruption of the existing schedule to the detriment of the

Defendants and the Court.

### 4. Justification for the Reports' Shortcomings.

Exclusion under Rule 37(c)(1) is self-executing unless the offending party can

show "substantial justification" for his actions or that there is no harm to the opposing

party.  Fed.R.Civ.P. 37(c)(1). Plaintiffs suggest that Defendants have been slow in

producing requested documents and that the experts need this information for their

reports.  This argument was rejected in *Jacobsen v. Deseret Book Co.*, 287 F.3d 936 (10th

Cir. 2002).  There a party contended that his expert report would have been "more

complete" if the opposing party "had been more forthcoming in responding to discovery

requests."  *Id.* at 954.  The court rejected this rationalization.

> Generally, a court should "'not excuse non-compliance with Rule 26 by
> one party for the reason that the other party may not have fully complied'"
> with discovery requests.

*Id*; s*ee also Carney v. Kmart Corp*., 176 F.R.D. 227, 230 (S.D.W.Va.1997); *Smith*, 164

F.R.D. at 54.

Plaintiffs had the obligation to meet the Court's deadline.  They could have

sought an extension of time to produce their expert reports, but failed to do so.  If

Defendants were not cooperating in discovery, they could have moved to compel, but

failed to do so until two months after the reports were served and two weeks after

Defendants filed their Motion to Strike.

Finally, this argument begs the question presented herein:  Are the reports as

served compliant with Rule 26(a)?  Clearly, whatever Plaintiffs might contend

Defendants failed to produce did not prevent Riddle, Watts and Winslade from forming opinions. The experts needed to inform Defendants what information and methodology support the opinions espoused on June 13. This is where the reports fail.

### 5. Is Non-Compliance Harmless?

Plaintiffs also assert that if the reports fail to meet the Rule 26(a) requirements, there has been no harm to Defendants. Again, the Court disagrees. Discovery cutoff in this case is September 15. Defendants have commissioned expert reports in response to Plaintiff's reports. Clearly, if Plaintiffs are now allowed to submit essentially new reports, Defendants will be forced to incur additional expense. The Court's trial schedule will also be adversely impacted. Furthermore, Defendants cannot prepare to depose Riddle, Watts or Winslade based on these reports. As the Court noted in *Jacobsen*, prejudice is created when expert reports do not reveal what the experts will testify to at trial. *Jacobsen*, 287 F.3d at 953. Defendants can only guess at the substance of the testimony and their own expert reports are adversely impacted.

## III
## CONCLUSION

The reports of Riddle, Watts and Winslade do not meet the requirements of Rule 26(a)(2). These experts offer opinions, but their reports wholly fail to state the basis and reasons for their conclusions. They thus fail to set forth the direct testimony they would offer at trial, and provide Defendants no basis for meaningful cross-examination. Even the opinions set forth are often "preliminary" or "expected opinions." This does not comply with Rule 26. It is Plaintiffs' burden to show substantial justification for the reports' inadequacies or that Defendants are not harmed thereby. They have failed in both respects. Accordingly, Defendants' motion to Strike is **GRANTED**. The proffered

14

expert reports of Riddle, Watts and Winslade are stricken and cannot be used to support

expert testimony.

DATED this 22nd day of August 2008.

Paul J. Cleary
United States Magistrate Judge

15