**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **GEORGE S. COHLMIA, JR., M.D.,** *et al.*, | ) ) ) |
| **Plaintiffs,** | ) ) |
| v. | ) **Case No. 05-CV-384-GKF-PJC** ) |
| **ARDENT HEALTH SERVICES, LLC,** *et al.*, | ) ) ) ) |
| **Defendants.** | ) |

<u>**OPINION AND ORDER**</u>

THIS MATTER comes before the Court on Plaintiffs' Motion to Compel

Discovery Responses of St. John Medical Center ("SJMC") (Dkt # 191); Plaintiffs'

Motion to Compel Discovery Responses of Defendants AHS Hillcrest Oklahoma Health

System LLP, AHS Hillcrest Medical Center, LLC; Hillcrest Healthcare System and

Hillcrest Medical Center (collectively "AHS" or "Defendants")[1] (Dkt # 194); Defendant

AHS' Motion for Protective Order (Dkt # 192); and Defendant James Albert Johnson,

M.D.'s ("Johnson") Motion for Protective Order (Dkt. # 218).  A hearing on these

motions was held September 18, 2008. For the reasons set forth below, Plaintiffs'

Motions to Compel are hereby GRANTED IN PART and DENIED IN PART;  AHS'

Motion for Protective Order is GRANTED IN PART and DENIED IN PART; and

Johnson's Motion for Protective Order is GRANTED IN PART and DENIED IN PART.

---

[1]     Although Plaintiffs served the bulk of their discovery requests on the "Ardent
Group Defendants" - Ardent Health Services, LLC ("Ardent"),  AHS Hillcrest
Oklahoma Health System LLP, AHS Hillcrest Medical Center, LLC; Hillcrest
Healthcare System and Hillcrest Medical Center, Ardent responded separately
from the rest of these defendants ("AHS").  Cohlmia's motion to compel (Dkt. #
194) and AHS' motion for protective order (Dkt. #192) deal only with the
objections asserted and production withheld by AHS.

**I**

*Background*

George S. Cohlmia, Jr. and Cardiovascular Surgical Specialists, Corp. ("Cohlmia"

or "Plaintiffs") initiated this action three years ago.  In its present form, the lawsuit

alleges federal and state antitrust, defamation, discrimination, and tortious interference

with  contract claims.[2]  Despite the variety of claims asserted, the focus of the litigation is

largely the antitrust allegations.  In simple terms, Cohlmia alleges that Defendants

conspired to wrongfully use the peer review processes at SJMC and Hillcrest Medical

Center ("Hillcrest")  to deny him staff privileges because Cohlmia and his company,

Cardiovascular Surgical Specialists, Inc. ("CSS"), were perceived as an economic threat

to Defendants in the market place.  Cohlmia alleges that the Defendants acted to interfere

with or restrict his ability to practice cardiovascular, thoracic and vascular surgery and

endovascular specialty procedures to remove him as a market competitor.[3]

In November 2007, Plaintiffs served the discovery requests at issue herein.   Since

that time the parties apparently have engaged in ongoing discussions, narrowing of

production requests and interrogatories, and, in the case of SJMC, "rolling" production,

until conflicting views of Judge Payne's August 9, 2006 Order regarding the peer review

privilege as well as the appropriate scope of discovery brought discovery to a grinding

---

[2]      Defendants maintain that U.S. District Judge James H. Payne's August 9, 2006
ruling in *Cohlmia v. Ardent Health Services, LLC*, 448 F.Supp.2d 1253 (N.D.Okla. 2006)
on the Motions to Dismiss the Amended Complaint limits the Tortious Interference with
Contract and Prospective Advantage claims asserted against defendant Dr. Ronald C.
Elkins, M.D. in the Second Amended Complaint.  Plaintiffs disagree.

[3]      A more detailed description of the case is set forth in *Cohlmia*, 448 F.Supp.2d at
1260-62.  (On April 23, 2007, the case was transferred from Judge Payne to Judge
Gregory K. Frizzell.  (Dkt # 119).

halt and resulted in the filing of AHS' and Johnson's motions for protective order and Cohlmia's motions to compel in early August 2008.[4]

## II
### *Applicable Legal Standards*

It is well-established that discovery under the Federal Rules is limited only by relevance and burdensomeness. *Rich v. Martin Marietta Corp.*, 522 F.2d 333, 343 (10th Cir. 1975). Trial courts have broad discretion in managing discovery matters and are subject to review only for abuse of discretion. *In re Multi-Piece Rim Products Liability Litigation*, 653 F.2d 671, 679 (D.C.Cir. 1981).

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party…. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). At the discovery phase of litigation "relevancy" is broadly construed and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party. *Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 652 (D.Kan. 2004)(citation omitted). A discovery request should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party. *Id.*

When the requested discovery appears relevant, the party opposing discovery has the burden of establishing the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance set forth in Rule 26(b)(1), or that

---

[4]     Pursuant to the Court's Amended Standard Scheduling Order of March 27, 2008, discovery cutoff was September 15, 2008. (Dkt. # 154).

it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D.Kan. 2003) (citation omitted). A party resisting discovery on the ground that the requests are overly broad has the burden of supporting its objection, unless the request is overly broad on its face. *McCoo v. Denny's, Inc.*, 192 F.R.D. 675, 686 (D.Kan. 2000).

### III
### *Discussion*

The requests for production and interrogatories at issue involve peer review, financial data, and contracts. In the interest of clarity and efficiency, the Court will address the motions according to subject matter.[5]

### A.      *Peer Review Process*

At the time of the hearing, the parties identified only the following production requests and interrogatories seeking discovery of "peer review" materials as remaining in dispute. The objection(s)[6] are noted thereafter.

**Request for Production (hereafter "RP") No. 3[7]: Produce the complete and entire application and credentialing file and all peer review files for every interventional radiologist with privileges or employment at [SJMC/Hillcrest] from January 1, 1998 to the present.**
SJMC objects to producing both the credentialing files and the confidential peer review files of all interventional radiologists as not relevant.
AHS objects that the request is overly broad, unduly burdensome, not relevant and seeks information protected by the peer review privilege.

---

[5]      As AHS' motion for protective order is subsumed by Cohlmia's motion to compel, the only requests for production and interrogatories in dispute are those identified herein.

[6]      The responses listed above incorporate the responses of SJMC on February 26, 2008 and July 29, 2008 and the response of AHS on February 8, 2008 and July 22, 2008.

[7]      If both SJMC and AHS object to the same Request for Production or Interrogatory, the Court refers to the production request or interrogatory simply by number. Otherwise, the Court will identify the request or interrogatory by the party to whom it is addressed; *i.e.,* SJMC or AHS.

**RP No. 4: Produce the complete and entire application and credentialing file and all peer review files for every interventional cardiologist with privileges or employment at [SJMC/Hillcrest] from January 1, 1998 to the present.**
SJMC objects based on relevance.
AHS objects that the request is overly broad, unduly burdensome, not relevant and seeks information protected by the peer review privilege.

**Interrogatory No. 4: Identify each and every medical staff member of [SJMC/AHS] whose medical staff privileges were subject to a review of any kind and/or whose medical staff privileges were placed on probation, placed under supervision, limited, suspended, restricted, not reappointed, or revoked from January 1, 1998 to the present.  Include in your answer the circumstances and facts related to each review, all findings and conclusions reached, and the actions taken in each instance, including any physician who resigned or terminated his or her own staff privileges voluntarily.**

**RP No. 32: All documents, communications and correspondence, including but not limited to findings, conclusions, root cause analysis, sentinel event reports, variance reports, JCAHO reports, patient files/charts, peer review and/or credentialing materials, transcripts, recordings, and the like, related to each review identified in response to Interrogatory No. 4 above.**
SJMC objects that the request/interrogatory  is overly broad, unduly burdensome, and not relevant.
AHS objects that the request/interrogatory is overly broad, unduly burdensome, not relevant and seeks information protected by the peer review privilege.

**AHS Interrogatory No. 14: Identify each and every case or procedure of any other cardiovascular or thoracic surgeon (other than Drs. Cohlmia and Yousuf) that has ever been submitted for peer review from January 1, 1997 to the present.**

**AHS RP No. 41: All documents, including but not limited to all root cause analysis, sentinel event reports, variance reports, JCAHO reports, patient files/charts/record, and peer review and/or credentialing materials, related to each and every case or procedure identified in response to Interrogatory No. 14 above.  Please produce such materials categorized by each individual case or procedure identified.**
AHS objects that the request/interrogatory is overly broad, unduly burdensome, not relevant and seeks information protected by the peer review privilege.

**AHS Interrogatory No. 17: Identify each and every case or procedure of any other interventional cardiologist that has ever been submitted for peer review from January 1, 1997 to the present.**

**AHS RP No. 44: All documents, including but not limited to all root cause analysis, sentinel event reports, variance reports, JCAHO reports, patient files/charts/record, and peer review and/or credentialing materials, related to each and every case or**

**procedure identified in response to Interrogatory No. 17 above.  Please produce such materials categorized by each individual case or procedure identified.**
AHS objects that the request/interrogatory is overly broad, unduly burdensome, not relevant and seeks information protected by the peer review privilege.

**SJMC RP No. 19: Produce all correspondence between SJMC on the one hand and any Defendants on the other hand, since January 1, 1998, which relates or refers in any way to Dr. George S. Cohlmia, CSS, this lawsuit, Dr. Arshad Yousuf, or the provision of cardiovascular or thoracic surgical services, endovascular procedures, cardiology services, and/or carotid endarterectomy services.**
SJMC has produced all non-privileged correspondence between SJMC and the other defendants regarding Cohlmia and objects to documents relating to Dr. Yousuf as not relevant.

**SJMC RP No. 20: Produce all correspondence, memoranda, or other documents relating to any complaints or concerns expressed by patients or health care providers regarding Dr. Cohlmia or CSS, Dr. Yousuf, or any other cardiovascular or thoracic surgeon operating at SJMC.**
SJMC has produced the requested documents relating to Cohlmia and CSS but objects to the request as to Dr Yousuf as he never had privileges at SJMC and to other cardiovascular or thoracic surgeons as they are irrelevant.

**SJMC Interrogatory No. 5**: **Please identify each person with knowledge of facts, circumstances, and events concerning the recruitment, interview, review, hiring, employment, credentialing, peer review, investigation and/or termination of Arshad Yousuf, M.D. as a physician at SJMC and/or Hillcrest Medical Center.**
SJMC objects that Dr. Yousuf was never a member of SJMC's medical staff and his application for privileges is highly confidential and not relevant.

**SJMC RP No. 21: Transcripts of all prior trial or deposition testimony of David J. Pynn, Dr. William Allred, Dr. John Forest and Dr. William Burnett.**
SJMC objects as irrelevant.[8]

**SJMC RP No. 83: All transcripts, minutes, notes, recordings, related documents, or documents arising out of any meeting(s) of the SJMC Board of Trustees in which Dr. George Cohlmia or his practice was a topic from January 1, 1998 to the present.**
SJMC states that it has produced relevant *redacted* minutes; the redactions relate to highly confidential and proprietary matters that had no relevance to Dr. Cohlmia or his practice. **[The unredacted documents were submitted to the Court for *in camera* review.]**
SJMC has produced relevant, redacted minutes of the meeting of SJMC Board of Directors referring to Cohlmia and his practice for the time period requested.  The redactions relate to highly confidential and proprietary matters that have no relevance to Cohlmia or his practice.

---

[8]        This matter was resolved at the September 18th hearing.

A fundamental issue in the pending motions is the applicability of the so-called "peer review privilege." *See* 63 Okla. Stat. Ann. §§ 1-1709 to 1-1709.1.  In his August 2006 Opinion and Order, Judge Payne expressly found that "the peer review privilege is not applicable in this case," and that " discovery may proceed unfettered, pursuant to the Court's findings herein that the peer review information is not privileged." *Cohlmia*, 448 F.Supp.2d at 1273 and 1275.  In order to protect the sensitive nature of information that would otherwise fall within the peer review privilege in state court, Judge Payne indicated that he would consider an agreed protective order. *Id.* at 1274.  After extensive debate among the parties, an agreed "Consent Protective Order" governing disclosure of confidential peer review and personal health information was entered on Oct. 17, 2007. (Dkt. # 138).  Thus, based on Judge Payne's ruling – which has not been altered or amended by Judge Frizzell – the Oklahoma peer review privilege is not applicable in this case.

However, this does not mean that all peer review information is discoverable.  All information requested through discovery must meet the basic standard of Rule 26(b)(1):

> [T]he scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense….  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.  All discovery sought is subject to the limitations imposed by Rule 26(b)(2)(c).

Fed.R.Civ.P. 26(b)(1). Thus, even if the peer review privilege does not apply, the requested discovery must pass the Rule 26(b)(1) relevance test and – perhaps as important – the provisions of Rule 26(b)(2)(c) pertaining to burdensomeness, expense, and likely value.

1.      *Preliminary Matters*

Plaintiffs have submitted excerpts of several depositions in which witnesses were instructed not to answer questions regarding peer review matters, apparently on the ground that AHS was continuing to assert the peer review privilege.  Rule 30(c)(2) of the Federal Rules of Civil Procedure states that a witness may be instructed not to answer at a deposition only in very limited situations.  Fed.R.Civ.P. 30(c)(2).  Preservation of a privilege is one of these grounds; however, in light of Judge Payne's ruling that the peer review privilege does not apply in this case, the instruction to the witnesses and their refusal to answer was not appropriate.  The Consent Protective Order was meant to provide protection for confidential peer review information that would otherwise have fallen within the state peer review privilege had this case been filed in state court.  Defendants' action disregarded Judge Payne's clear analysis and conclusion relying on such case law as *Teasdale v. Marin General Hospital*, 138 F.R.D. 696, 698 & n.5 (N.D.Cal. 1991) and *Mem'l Hosp. for McHenry County v. Shadur*, 664 F.2d 1058, 1063 (7th Cir. 1981).  *See Cohlmia*, 448 F.Supp.2d at 1272-73.  Accordingly, Plaintiffs may reopen the depositions of parties and witnesses who were instructed not to answer based on peer review privilege.  The interrogation, however, must be limited solely to that line of questioning.

Additionally, SJMC has produced peer review information to Plaintiffs but has unilaterally redacted the names of the physicians involved.[9]  SJMC contends this is necessary to protect the individual doctors who agree to participate in the peer review process.  The Court finds that the Consent Protective Order provides adequate protection

---

[9]      SJMC provided Cohlmia with QA spreadsheets on the cardiovascular and thoracic surgeons who have practiced at SJMC from 1998 to the present but redacted their names.

in this regard, and, therefore, un-redacted copies of these documents should be produced to Plaintiffs.[10]

### 2. *Scope of Peer Review Discovery*

A major dispute in this case is the scope of discovery concerning peer review matters. A number of courts have addressed the issue of whether peer review privilege applies in cases such as this and have held that it does not. *E.g. Teasdale*, 138 F.R.D. at 694; *Shadur*, 664 F.2d at 1063; *Rdzanek v. Hospital Service Dist. No. 3*, 2003 WL 22466232 at *3-4 (E.D.La. Oct. 29, 2003); *Pagano v. Oroville Hospital*, 145 F.R.D. 683, 688 (E.D.Cal. 1993); *Price v. Howard County General Hospital*, 950 F.Supp. 141, 143-44 (D.Md. 1996). As the court noted in *Shadur*, "The public interest in private enforcement of federal antitrust law in this context is simply too strong to permit the exclusion of relevant and possibly crucial evidence by application of the [peer review privilege]." *Id.* at 1063. However, this Court has found no case – and the parties have cited none – in which the court discussed the next level of concern: relevance, over-breadth, and burdensomeness in the context of a physician's antitrust action.

Plaintiffs' discovery requests seek a broad range of documents pertaining to physicians at SJMC and AHS. Even if the peer review privilege does not apply in this case, questions of relevance, over-breadth and burdensomeness must be resolved.

The discovery requests which define the outer reaches of the scope of the document requests and interrogatories regarding peer review are as follows:

---

[10] At the September 18 hearing the parties advised the Court that this issue of redaction was the sole issue to be resolved with respect to Plaintiffs' Motion to Compel Discovery from SJMC regarding RP Nos. 2, 36, 38, 106 and 108 and Interrogatory Nos. 9 and 11.

**Interrogatory No. 4**
**Identify each and every medical staff member of [SJMC/AHS] whose medical staff privileges were subject to a review of any kind and/or whose medical staff privileges were placed on probation, placed under supervision, limited, suspended, restricted, not reappointed, or revoked from January 1, 1998 to the present.  Include in your answer the circumstances and facts related to each review, all findings and conclusions reached, and the actions taken in each instance, including any physician who resigned or terminated his or her own staff privileges voluntarily.**

**RP No. 32**
**All documents, communications and correspondence, including but not limited to findings, conclusions, root cause analysis, sentinel event reports, variance reports, JCAHO reports, patient files/charts, peer review and/or credentialing materials, transcripts, recordings, and the like, related to each review identified in response to Interrogatory No. 4 above.**

On its face, this request is over-broad, vague and burdensome.[11]  A full response might require production of every document concerning every peer review of every staff member at SJMC and AHS for a 10-year period of time.  SJMC estimates this would cover 690 current staff physicians and another 500 to 700 doctors who are not currently on staff would also be affected.  AHS states that Hillcrest's entire medical staff consists of approximately 644 physicians in any given year and for a ten year period that number would be greatly exceeded.  Further, SJMC and AHS note that even if they culled through the thousands of files, such would not ensure that every document related to each staff member's review had been found and produced.

---

[11]   Some courts have held that a request is unduly burdensome on its face if, as here, it uses the "omnibus term 'relating to' or 'regarding' with respect to a general category or group of documents."  *Aikens v. Deluxe Fin. Svcs.*, 217 F.R.D. 533, 538 (D.Kan. 2003); *Johnson v. Kraft Foods*, 238 F.R.D. 648, 658-59 (D.Kan. 2006); *Doricent v. American Airlines, Inc.*, 1993 WL 437670 *10 (D.Mass. 1993) (such a request "does not apprise the recipient of the scope of the documents sought").

SJMC argues that the production of peer review material should be limited to those doctors who are direct comparators to Cohlmia.  In this regard, SJMC has produced or offered to produce redacted peer review files of 12 cardiovascular surgeons since Cohlmia performed only as a cardiovascular surgeon while at SJMC.  AHS demands even further restriction, offering documents relating only to cardiovascular surgeons at Hillcrest  who have the same morbidity and mortality rates as Cohlmia  in performing Coronary Artery Bypass Graft ("CABG" or "Cabbage") and valve surgery.  Courts in cases where the underlying claim is an antitrust claim, have often granted more expansive discovery than that suggested by SJMC and AHS.  *See Shadur,* 664 F.2d at 1062-63 (discovery allowed for documents regarding all physicians who applied for hospital staff privileges); *Pagano,* 145 F.R.D. at 686-87, 699 (OB-GYN's request for documents regarding complaints against all surgeons granted).

At the hearing held Sept. 18, 2008, Plaintiffs agreed to narrow the scope of Interrogatory No. 4, but argued for a wider basis of comparison with Cohlmia than the limited scopes offered by AHS and SJMC.  Plaintiffs seek the peer review and/or credentialing files of all cardiovascular surgeons, interventional radiologists and cardiologists at SJMC and AHS from 1998 to the present.  They also identify as comparators all other physicians during that time period who "experienced outcomes similar in alleged type and alleged severity to those alleged to have been experienced by Dr. Cohlmia, but who were not subject to similar disciplinary proceedings."  *Plaintiffs' Reply* p. 6 (Dkt. #233).  In addition, Plaintiffs specifically seek peer review and/or

credentialing files for the list of 17 Oklahoma Heart Institute ("OHI") physicians set forth in Exhibit 1 to their Reply (Dkt. #233).[12]

SJMC estimates that the number of cardiovascular surgeons, interventional radiologists and cardiologists practicing at SJMC from 1998 to the present would involve 90-100 files.  AHS estimates this group would involve 120 files.  The Court finds this reduction to be reasonably calculated to lead to the discovery of admissible evidence and not unduly burdensome.  The Court, however, finds that all other physicians who "experienced outcomes similar in alleged type and alleged severity to those alleged to have been experienced by Dr. Cohlmia, but who were not subject to similar disciplinary proceedings" is too subjective a descriptor to be of any practical use here and would lead to even more meritless discovery disputes in an already overly contentious case. Accordingly, Defendants shall produce for inspection and copying all peer review and/or credentialing files[13] for cardiovascular surgeons, interventional radiologists and cardiologists who practiced at SJMC, Hillcrest, and the AHS entities within Defendants-defined, "relevant geographical market," *i.e,* that is, Northeastern Oklahoma, from January 1, 1998 through December 31, 2007, including the 17 OHI physicians listed in

---

[12]    At the hearing Plaintiffs also requested that the Court allow them to reopen the depositions of Hillcrest and SJMC staff members who participated in the evaluation and peer review of Cohlmia, and who were instructed not to answer based on the peer review privilege; *i.e.*, Drs. Johnson, Leimbach, Landgarten, Roberts, and Milsten  The Court grants the request, limited to the peer review topic.

[13]    Based on AHS' representation at the September 18th hearing that it keeps three separate files on each of its physicians - sentinel event file, peer review file and credentials file - and that the credentials file does not include any of the pertinent documents sought by Plaintiffs, Plaintiffs agreed to withdraw their request for the credentials files from AHS. Plaintiffs also assured that they were not seeking the routine two-year reviews of all AHS physicians.

    SJMC, on the other hand, states that a sentinel event relating to a particular physician results in the preparation of a "variance report" placed in both the physician's credentialing and confidential peer review files.

Exhibit 1 of Cohlmia's Reply (Dkt. #233).  These should be produced in an unredacted form.

Finally, Plaintiffs object to SJMC's limited response to R.P. No. 83 wherein SJMC produced *redacted* minutes of its Board of Trustees meeting(s), during the relevant time period, in which Cohlmia or CSS was a topic.  SJMC provided copies of minutes that were redacted of all transactions other than those entries referring to Cohlmia or his practice. Plaintiffs object that SJMC should not be able to determine what to redact as not relevant because other topics of discussion at the meeting(s) may have been related to or arisen from a discussion of Cohlmia and his practice. At the September 18th hearing, the Court agreed to review the unredacted documents *in camera* and has determined that the only relevant documents to be produced unredacted are the Report, Recommendation and Judgment of Hearing Officer in St. John Medical Center and the Summary Suspension of George S. Cohlmia, Jr. M.D. (Tab 6 and 10) and Dr. Cohlmia's Nov. 11, 2003, letter to the St. John Medical Center Board of Directors (Tab 6).[14]

### 3.    *Discovery relating to Dr. Arshad Yousuf*

Cohlmia seeks all credentialing and peer review documents, including patient and/or healthcare provider complaints, relating to Dr. Arshad Yousuf, as well as the identification of those with knowledge of the facts surrounding the recruitment, interview, credentialing, peer review, investigation and/or termination of Dr. Yousuf as a physician at SJMC and/or Hillcrest.  SJMC objects, contending that such information is irrelevant because Dr. Yousuf was never a member of SJMC's medical staff.

---

[14]    The Court assumes that Cohlmia has a copy of these documents, but directs their production in an abundance of caution.

Cohlmia argues that Dr. Yousuf's membership in SJMC medical staff is not the issue. This information is relevant because Dr. Yousuf was hired to replace Cohlmia at Hillcrest and considered by Hillcrest to be more qualified than Cohlmia, though SJMC refused to grant him privileges. Cohlmia contends that the information Dr. Yousuf provided SJMC in his application and file is probative, if for no other reason than for comparison to the credentialing and peer review information on Dr. Yousuf at Hillcrest.

The Court agrees that this information is relevant and thus directs SJMC to produce all information responsive to SJMC Interrogatory No. 5 and SJMC RP Nos. 19 and 20 relating to Dr. Yousuf.

### 4. *Rulings on "Peer Review" Interrogatories and Requests*

*Within the parameters set forth above*, see Section III(A)(2), the Court orders AHS to produce all "peer review" information responsive to Interrogatory Nos. 4, 5, 14 and 17 as well as RP Nos. 3, 4, 32, 41, and 44, and SJMC to produce all "peer review" information responsive to Interrogatory Nos. 4 and 5 as well as RP Nos. 3, 4, 19, 20 and 32.

### B. *Financial Data*

AHS objects to the financial data Plaintiffs have requested; *i.e.*, the financial statements for all of the AHS entities (AHS RP No. 5), annual revenue information for all of the AHS entities (AHS RP No. 6), Federal and State Tax Returns for all of the AHS entities (AHS RP No. 29), and all documents reflecting inquiries or negotiations to buy an interest in all of the AHS entities (AHS RP No. 30). The specific requests and objections are stated below:

**AHS RP No. 5: Produce all financial statements for Ardent Hillcrest Services, LLC, AHS Oklahoma Health System, LLP, AHS Hillcrest Medical Center,**

**LLC, Hillcrest Healthcare System, and/or Hillcrest Medical Center, from January 1, 1998 to the present, including but not limited to, balance sheets, income statements, profit and loss statements, and cash flow statements.**

AHS objects that the request is irrelevant, overly broad, and burdensome but without waiving these objections directs Plaintiffs to the documents identified in Amended Exhibit 1.[15]  AHS also objects that Plaintiffs are requesting proprietary business information which could subject AHS to significant business harm.[16]

**AHS RP No. 6: Produce all documents (excluding individual invoices and claims forms) sufficient to show the amount of annual revenue that Ardent Health Services, LLC, AHS Oklahoma Healthy System, LLP, AHS Hillcrest Medical Center, LLC, Hillcrest healthcare System, and/or Hillcrest Medical Centner received from each third-party payor since January 1, 1998.**

AHS objects that the request is irrelevant, overly broad, burdensome and contains proprietary business information, but without waiving these objections directs Plaintiffs to the documents identified in Amended Exhibit 1, incorporating by reference the documents produced in response to RP Nos. 12, 13 and 16 in February 2008.

**AHS RP No. 29: All Federal and State tax returns, including all schedules, attachments, amendments, exhibits, and the like, for Ardent Health Services, LLC, AHS Oklahoma Health System, LLP, AHS Hillcrest Medical Center, LLC, Hillcrest Healthcare System, and/or Hillcrest Medical Center from 1998 to the present.**

AHS objects that the request is irrelevant, overly broad, and burdensome and contains proprietary business information.

**AHS RP No. 30: All correspondence and/or other documents relating to any inquiries, negotiations, and/or offers to buy interest in Ardent Health Services, LLC, AHS Oklahoma Health System, LLP, AHS Hillcrest Medical Center, LLC, Hillcrest Healthcare System, and/or Hillcrest Medical Center from 1998 to the present**.

AHS objects that the request is irrelevant, overly broad, and burdensome and contains proprietary business information.

AHS objects to these requests covering all of the AHS entities[17] over a ten-year

period, contending that the allegations in this case claim anticompetitive acts between

---

[15]     Amended Exhibit 1 was not attached to any of the relevant pleadings.

[16]     AHS has since withdrawn its objections based on confidentiality and proprietary business information in AHS RP Nos. 5, 6, 29, and 30.

[17]     These entities include the following: Hillcrest, Tulsa Regional Medical Center, Hillcrest Specialty Hospital, Cushing Regional Medical Center, Bristow Memorial Hospital, Cleveland Area Hospital, Henryetta Medical Center, Wagoner Medical Center, AHS Oklahoma Physician Group, AHS Management Services of Oklahoma, LLC, AHS Tulsa Holdings, LLC, Bailey Medical Center, LLC, AHS Riverside PHO, AHS Academic Health Center, LLC, AHS Hillcrest IPA, and Northpark Surgery Center, LLC.

Hillcrest and SJMC, OHI and CVT Surgery, Inc. ("CVT") that resulted in Cohlmia losing his hospital privileges, the failure of his specialty heart hospital, loss of contracts or business potential, and injury as a result of defamatory remarks.  The only AHS entities from which financial information is relevant are Hillcrest and Hillcrest Healthcare System ("HHS") and they have produced in excess of 5000 pages of revenue data and pricing from which Plaintiffs can determine the revenue Hillcrest and HHS derived from the relevant product market for cardiovascular services, interventional radiology services and cardiology services and how much each payor paid for those services.  Also, Plaintiffs have Hillcrest's inpatient revenue data, inpatient and outpatient cardiology services charges, and case mix data, which combined, provide Plaintiffs with the amount of revenue derived from the relevant product (cardiology, cardiovascular and interventional radiology services) organized by payor class, *e.g.*, self-pay, Medicare, Indian agencies and HMOs.  Finally, AHS states it has produced the consolidated financial statements and income statements for Hillcrest and HHS for the years 1997-2008.[18]

AHS however objects to producing financial records for non-Hillcrest entities as they do not provide relevant product - cardiology, cardiovascular and interventional radiology services.  AHS also objects to the requests regarding offers to buy as irrelevant. Finally, it objects to the production of the federal and state tax returns of Hillcrest and HHS as irrelevant as the returns give no information related to income from cardiology, cardiovascular and interventional radiology services.  The only relevance of the tax

---

[18]      Various time periods covering the produced Hillcrest and HHS financial records were bandied about by the parties throughout the briefs and at the hearing.  However, the parties eventually agreed that AHS had produced Hillcrest's and HHS' financial records from 1997-2008.

returns, AHS asserts, is if punitive damages goes to the jury and thereby renders Hillcrest's and HHS' ability to pay a judgment relevant.  AHS states that it has offered to produce the tax returns should punitive damages survive summary judgment.

Plaintiffs state that they are only seeking the financial information their experts had requested and AHS should not be allowed to unilaterally define the scope of Plaintiffs' experts' analysis.  They object that AHS has only produced the requested financial records of Hillcrest and HHS, and even then, AHS has refused to produce federal and state tax returns or documents relating to any offers to buy during the relevant time period.  Plaintiffs argue that offers to buy are relevant because the Hillcrest entities would have been more threatened by Cohlmia's intention to establish his own heart hospital if there were pending offers to buy the Hillcrest entities.

The Court agrees with AHS that the non-Hillcrest entities, even if  within the relevant geographical market, need not produce the financial documents requested in AHS RP Nos. 5 and 6 if they do not provide cardiovascular, cardiology or interventional radiology services.  Plaintiffs have not countered AHS' objection to the lack of relevance of these documents if these services are not provided by the AHS entity other than a general statement that Plaintiffs' experts have requested them.  While there may a "possibility" that this information is relevant to Plaintiffs' claims, Plaintiffs have not articulated any ground for that possibility.  The Court, however, grants Plaintiffs' motion to compel the federal and state tax returns of all the AHS entities *in the relevant geographical area* because the tax returns are relevant, as AHS admits, to Plaintiffs' claims for punitive and treble damages in this case, and their production is not burdensome.  *See* AHS RP No. 29.  Finally, as the documents are relevant and their production not burdensome, the Court also orders the production of all documents

17

pertaining to any inquiry, negotiation and/or offer to buy interest in any of the AHS

entities *in the relevant geographical area* which provides cardiology, cardiovascular or

interventional radiology services.  *See* AHS RP. No. 30.

> **C.     Contracts**

Plaintiffs seek production of contracts between the AHS entities and third-party

payors of medical services in effect at any time from 1998 to the present; specifically,

> **AHS RP No. 111: Please produce a complete and accurate copy of each and
> every contract, including any attachments, schedules, price lists, reimbursement
> provisions, addendums, exhibits, and the like, between Ardent Health Services,
> LLC, AHS Oklahoma Health System, LLP, AHS Hillcrest Medical Center, LLC,
> Hillcrest Healthcare System, and/or Hillcrest Medical Center on the one hand, and
> any payor of medical services including cardiovascular surgical services (also
> including interventional radiology and cardiology services), thoracic surgical
> services, endovascular surgical services (also including interventional radiology and
> cardiology services), carotid endarterectomy surgical services (also including
> interventional radiology and cardiology services), and/or cardiology care services in
> effect at any time from January 1, 1998 to the present.  This request includes but is
> not limited to contracts with insurers, government sources, tribal sources,
> employers, patients, etc.**

AHS objects that the request is irrelevant, overly broad, burdensome and contains
proprietary business information.

When AHS complained that the request was overly broad, Plaintiffs advised AHS

in a discovery conference that the request did not contemplate information for every

individual patient or every medical service; rather, Plaintiffs were interested only in

contracts for the specific services listed and did not seek contracts with individual

patients or renewal contracts which contained no substantive changes.  Plaintiffs also

limited the request to AHS entities in the relevant geographical market as defined by

AHS.

AHS responded that it "is not aware of any contracts that limit coverage to only

the cardiovascular and cardiology service areas.  Therefore, an accurate response to

Plaintiffs' Request would include the production of information relating to OB/Gyn

services, emergency room services, pediatric services and more." *AHS Response, p. 13*
(Dkt. # 217). AHS explained that at least 400 contracts would be involved with an
average of 250 pages in length and attached the affidavit of Robert Langland, Hillcrest's
Division Chief Financial Officer, attesting that their production would require
approximately 60-80 hours of work. *Exhibit 3 to AHS Response* (Dkt # 217-4). AHS
also argued that the documents were irrelevant as Plaintiffs claimed relevance based only
on their tortious interference with contract claim yet the third-party payor contracts cover
hospital charges, not physician charges, for the care provided. Further, the documents
would not provide pricing information to support Plaintiffs' antitrust claims and AHS has
already provided Plaintiffs with the master price lists and the amount paid to third-party
payors.

Plaintiffs counter that the documents are relevant because the terms of the
contracts demonstrate the general pricing and trending information for the services at
issue. At the hearing Plaintiffs' counsel pointed out that Hillcrest's CEO Steve Dobbs
testified at his deposition that third-party payor contracts and what is paid in comparison
to what the master price lists show directly reflect the amount the payors can command
which in turn directly affects the amount of competition in the product market. Thus, if
there were another facility such as Cohlmia's in the product market, it would drive the
third-party payor bargaining position (as to what they are paying hospitals such as
Hillcrest and SJMC) downward.

The Court finds that the documents are relevant and production as limited by
Plaintiffs is not overly burdensome. The Court, therefore, orders the AHS entities within
the relevant geographical area (NE Oklahoma) to produce all third-party payor contracts,
except individual patient contracts and renewal contracts that do not contain substantive

changes, involving "cardiovascular surgical services (also including interventional radiology and cardiology services), thoracic surgical services, endovascular surgical services (also including interventional radiology and cardiology services), carotid endarterectomy surgical services (also including interventional radiology and cardiology services), and/or cardiology care services in effect at any time from January 1, 1998 to the present."

### D.   *Johnson's Motion for Protective Order (Dkt. #218)*

At his deposition on August 23, 2008, Johnson was instructed by his counsel not to answer questions concerning (1) the allegations of sexual harassment against him, (2) the allegation that Johnson dropped his fist into or hit a patient in the operating room when he became angry, (3) whether he had been asked to obtain counseling, (4) whether he had ever been required to seek anger management counseling, and (5) his knowledge of peer review conduct of physicians who are not parties to this lawsuit.  Johnson contends that these lines of questioning are irrelevant to the claims in this case and were pursued with the intent to intimidate and harass him.  He also contends that he could not waive AHS' privilege regarding peer review and thus was justified in not answering questions regarding peer review of non-party physicians.  Accordingly, Johnson seeks an order protecting him from answering questions regarding the above.

Plaintiffs counter that all of the above lines of questioning are clearly relevant as Johnson is the very party who was directed to monitor Cohlmia and to whom Cohlmia was required to report at Hillcrest.  Plaintiffs have alleged that Defendants separately and in concert acted to destroy Cohlmia's livelihood because he presented an economic threat, and did so by utilizing the peer review process in an illegal manner to injure Cohlmia on the ostensible basis of concerns about Cohlmia's "judgment."  Plaintiffs

allege that other physicians who engaged in similar conduct but who did not present an economic threat to Defendants were not subjected to the same disciplinary actions as Cohlmia.  Plaintiffs argue that allegations against Johnson of sexual harassment, striking a patient, and directives to obtain counseling and anger management counseling are clearly relevant as Johnson testified that he was never placed on probation, suspended or had his privileges revoked.  Further, such indicates that Johnson was "beholden" to Hillcrest and thus willing to use his position in the peer review process to remove Cohlmia as an economic threat.

First, as the Court noted above, the peer review privilege does not apply here and Defendants'  reliance on the privilege in instructing Johnson not to answer was inappropriate.  Further, the Court finds that the allegation that Johnson struck a patient in the operating room when he was angry relates to patient care and safety and, thus, is relevant.  Similarly, if Johnson were directed to obtain counseling or anger management counseling due to conduct impacting patient care and safety, such would also be relevant.  If not related to patient safety and treatment issues, then the counseling and anger management would not be relevant.  Finally, the Court concludes that the allegation of Johnson's sexual harassment is sufficiently distinct from the conduct for which Cohlmia's hospital privileges were purportedly revoked as to be irrelevant to any of the claims herein.

Accordingly, the Court grants Johnson's motion for protective order in part and denies it in part and directs that Johnson's deposition be reopened to allow the lines of questioning the Court has found relevant and not privileged.

**III**

*Conclusion*

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motions to Compel Discovery Responses of Defendant, St. John Medical Center (Dkt. # 191); **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion to Compel Discovery Responses of Defendants AHS Oklahoma Health System, LLP, AHS Hillcrest Medical Center, LLC; Hillcrest Healthcare System, and Hillcrest Medical Center (Dkt. # 194); **GRANTS IN PART AND DENIES IN PART** Defendant Ardent Health Services, LLC, AHS Oklahoma Health System, LLP, AHS Hillcrest Medical Center, LLC, Hillcrest Healthcare System, and Hillcrest Medical Center's Motion for Protective Order (Dkt. # 192); and **GRANTS IN PART AND DENIES IN PART** the Motion for Protective Order of Defendant James Albert Johnson, M.D. (Dkt. # 218).  As there is ample responsibility to be shared among the parties for failing to resolve the majority of the discovery disputes, the Court denies Plaintiffs' request for sanctions against Defendants AHS and SJMC.  Finally, the Court **RECOMMENDS** that Plaintiffs' (Second) Motion for Entry of a New Scheduling Order (Dkt. # 246) be granted to allow the time the District Judge deems necessary for Plaintiffs to complete the discovery compelled above.

IT IS SO ORDERED, this 14th day of November, 2008.

_____

Paul J. Cleary
United States Magistrate Judge